**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| BRANDON JAMES, individually and on behalf of all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>THE VANGUARD GROUP, INC.,<br><br>Defendant. | Civil Action No.<br><br>**CLASS ACTION COMPLAINT**<br><br>**JURY TRIAL DEMANDED** |

## CLASS ACTION COMPLAINT

Plaintiff Brandon James ("Plaintiff"), individually and on behalf of all others similarly situated, files this Class Action Complaint against Defendant The Vanguard Group, Inc. ("Vanguard" or "Defendant"). Plaintiff's allegations concerning Plaintiff and Plaintiff's own experiences are based on personal knowledge. All other allegations are made upon information and belief, formed after a reasonable inquiry by counsel, and are likely to have further evidentiary support after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1. This is a data breach class action against Vanguard or failing to secure the Social Security numbers and other sensitive personal and account information that it required its clients to provide and that it maintained in the ordinary course of its business.

2. Plaintiff brings this action on behalf of all persons whose Personally Identifiable Information ("PII") was accessed or acquired without authorization in the data security incident that Vanguard reported to the Office of the Vermont Attorney General on November 4, 2026 (the "Data Breach").

3. Vanguard is an investment management company, serving more than 50 million investor clients and managing approximately $13.3 trillion in assets.[1]

4. Plaintiff is an investor client of Vanguard.

5. Opening an investment account at Vanguard requires a client to hand over the identifiers that unlock the rest of the client's financial life: full name, Social Security number, date of birth, home address, and the mobile telephone number Vanguard uses to verify the client's identity and deliver one-time security codes. Vanguard demands this information as a condition of doing business and profits from the accounts it opens with it.

6. In mid-October 2026, a threat actor advertised on a dark web forum a database that it claimed to have taken from Vanguard's network servers, consisting of more than 14 million records.[2] Upon information and belief, additional compromised data includes SMS verification logs reflecting timestamps, telephone numbers, countries, and mobile carriers.

7. On or about November 4, 2026, Vanguard reported a security breach to the Office of the Vermont Attorney General, identifying Social Security numbers among the categories of personal information involved.[3] Apart from that regulatory reporting, Vanguard has not affirmatively notified its clients or the public of when the intrusion began, when it was discovered, how the attacker got in, what data was taken, or how many people are affected nationwide.

8. Upon information and belief, Plaintiff's and Class Members' PII was compromised as a result of this Data Breach.

---

[1] https://www.nl.vanguard/professional/about-vanguard.

[2] ThreatMon (@MonThreat), X (Oct. 16, 2026, 3:41 PM), https://x.com/MonThreat/status/2111120347026125224 (last visited Nov. 6, 2026).

[3] Security Breach Notices, Off. of the Vt. Att'y Gen., https://ago.vermont.gov/categories/security-breach-notices (entry for Vanguard Group, Inc., reported Nov. 4, 2026) (last visited Nov. 11, 2026).

9. The pairing of Social Security numbers with telephone-number and carrier data makes this breach unusually dangerous. Those data points are the raw materials for “SIM-swap” and account-takeover fraud, in which criminals hijack a victim’s mobile number to intercept the very text-message codes that financial institutions—including Vanguard—use to protect brokerage and retirement accounts.

10. Vanguard had numerous statutory, regulatory, contractual, and common law duties and obligations, including those based on its affirmative representations to Plaintiff and the Class, to keep their PII confidential, safe, secure, and protected from unauthorized disclosure or access. It is a financial institution subject to the Gramm-Leach-Bliley Act and to the Securities and Exchange Commission’s Regulation S-P, which, as amended in 2024, requires covered firms to maintain a written incident response program and to notify affected individuals no later than thirty days after learning that sensitive customer information was, or was reasonably likely to have been, accessed without authorization. Vanguard knew of these obligations and of the risks they are designed to address, yet failed to protect its clients’ data and has failed to tell them what happened.

11. Plaintiff brings this action on behalf of a Nationwide Class of persons whose personal information was compromised in the Data Breach, asserting claims for negligence, negligence *per se*, breach of fiduciary duty, breach of implied contract, unjust enrichment, and declaratory and injunctive relief. Plaintiff seeks damages, restitution, and an order compelling Vanguard to remediate its data security practices, disclose the full scope of the Data Breach, and provide meaningful identity protection to affected individuals.

## PARTIES

**Plaintiff**

12. Plaintiff Brandon James is an adult who, at all relevant times, resided in and was a citizen of North Carolina. Plaintiff is a victim of the Data Breach.

13. Plaintiff is a current Vanguard client. Plaintiff has held an IRA and a brokerage account with Vanguard for approximately the past ten years.

14. To open and maintain his Vanguard accounts, Plaintiff provided Vanguard directly with PII, including his Social Security number, name, date of birth, telephone number, email address, and financial account information.

15. Plaintiff provided that PII with the reasonable expectation, and on the understanding, that Vanguard would keep it confidential and protect it with reasonable, industry-standard safeguards. Plaintiff would not have entrusted PII to Vanguard had Plaintiff known that Vanguard did not maintain adequate data security.

16. Plaintiff guards the confidentiality of his PII and has taken reasonable steps to keep it private, including creating unique passwords and limiting those who receive his Social Security number.

17. Upon information and belief, Plaintiff's PII, including Plaintiff's Social Security number, was compromised in the Data Breach and is now in the hands of criminals.

18. Upon information and belief, Vanguard's inadequate cybersecurity practices exposed Plaintiff's PII to unauthorized access and to the risk of theft, dissemination, and sale, including on the dark web.

19. Since learning of the Data Breach, Plaintiff has spent time and made reasonable efforts to address its consequences, including researching the Data Breach; reviewing Vanguard and other financial accounts for unauthorized activity; and reviewing credit reports.

20. Plaintiff has spent approximately one and one-half hours on these efforts to date. That is time Plaintiff otherwise would have spent on work, family, or personal activities.

21. Plaintiff suffered an invasion of privacy and loss of control over his PII as a result of its exposure in the Data Breach. Plaintiff also alleges damage to and diminution in the value of his PII, intangible property that Vanguard was obligated to safeguard.

22. Plaintiff anticipates continuing to devote time and effort to monitoring his accounts and credit to guard against identity theft and fraud, possibly for years to come.

23. Plaintiff worries about his future financial security and the uncertainty surrounding the information exposed, and has experienced anxiety, stress, fear, and frustration as a result of the Data Breach.

24. As a direct and proximate result of the Data Breach, Plaintiff faces a present and continuing risk of fraud, identity theft, and misuse of his PII by unauthorized third parties. Because a Social Security number cannot easily be changed, that risk may follow Plaintiff for life.

25. Plaintiff is concerned that further dissemination of his PII, including any sale or publication on the dark web, could enable bad actors to obtain additional information about Plaintiff and engage in further unauthorized use of Plaintiff’s identity.

26. Upon information and belief, Vanguard continues to maintain Plaintiff’s PII because Plaintiff remains a Vanguard client. Plaintiff retains a continuing interest in ensuring that this PII is protected against further unauthorized access or disclosure.

**Defendant**

27. Defendant The Vanguard Group, Inc. is a Pennsylvania corporation with its principal place of business at 100 Vanguard Boulevard, Malvern, Pennsylvania 19355.

## JURISDICTION AND VENUE

28. This Court has subject-matter jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2)(A), because the proposed Class has more than 100 members, the aggregate amount in controversy exceeds $5,000,000 exclusive of interest and costs, and at least one Class Member, including Plaintiff, is a citizen of a State different from Defendant.

29. This Court has general personal jurisdiction over Vanguard because Vanguard is incorporated in Pennsylvania and maintains its principal place of business in this District.

30. Venue is proper in this District under 28 U.S.C. § 1391(b)(1) and (b)(2) because Vanguard resides in this District and a substantial part of the events and omissions giving rise to the claims—including Vanguard's decisions concerning data security, data retention, and breach response—occurred in this District.

## FACTUAL ALLEGATIONS

***Vanguard Stores Highly Sensitive Client PII***

31. Founded in 1975 and headquartered in Malvern, Pennsylvania, Vanguard is one of the largest investment management companies in the world, serving more than 50 million investor clients and managing approximately $13.3 trillion in assets.[4] Vanguard offers mutual funds, exchange-traded funds, brokerage accounts, individual retirement accounts, employer-sponsored retirement plan services, and advisory services.

[4] https://www.nl.vanguard/professional/about-vanguard.

32. To open an account, Vanguard collects, at a minimum, each client's name, date of birth, residential address, and Social Security number—information that broker-dealers must obtain under federal customer identification rules. *See* 31 C.F.R. § 1023.220. Vanguard also collects clients' telephone numbers and email addresses and uses mobile telephone numbers to deliver one-time verification codes for account access and security.

33. Vanguard earns revenue from the accounts it opens and services with this information, including through fund expense ratios, advisory fees, and other charges paid by Plaintiff and Class Members. Collecting, storing, and using client PII is integral to Vanguard's business.

34. Vanguard holds itself out as a trustworthy steward of client information. Its privacy notices represent that Vanguard maintains physical, electronic, and procedural safeguards to protect clients' personal information.[5]

35. Plaintiff and Class Members reasonably expected that Vanguard—a fiduciary entrusted with their savings—would use reasonable, industry-standard measures to protect their PII, would retain it only as long as necessary, and would promptly tell them if it was compromised.

***The Data Breach***

36. In or about mid-October 2026, a cyber-threat intelligence account reported that a threat actor had posted on a dark web forum a claim to possess more than 14 million records taken from Vanguard and offered those records for sale.[6]

---

[5] Vanguard Personal investor privacy notice, available for download at https://investor.vanguard.com/privacy-center/personal-investor-privacy-notice.

[6] ThreatMon (@MonThreat), X (Oct. 16, 2026, 3:41 PM), https://x.com/MonThreat/status/2111120347026125224 (last visited Nov. 6, 2026).

37. Upon information and belief, the data reportedly includes SMS verification logs containing timestamps, telephone numbers, countries, and mobile carrier information. Such logs are generated when a financial institution sends a one-time passcode to a client's phone, and they reveal which telephone number a client relies on to secure the account and which carrier services that number.

38. On November 4, 2026, Vanguard filed a security breach notice with the Vermont Attorney General reporting that the Social Security numbers of 94 Vermont residents were involved.[7] That filing reflects Vanguard's own determination that a security breach involving client Social Security numbers occurred.

39. Vanguard has served clients in all fifty States. Upon information and belief, the number of affected individuals nationwide is many times the number reported in Vermont.

40. To date, Vanguard has not issued a public statement about the Data Breach. Upon information and belief, it has not disclosed the date or duration of the intrusion, the date it discovered the intrusion, the attack vector, the complete categories of data taken, the total number of affected individuals, or the steps it has taken to contain the breach and prevent a recurrence.

41. The advertisement of the data for sale on the dark web indicates that the intrusion was deliberate, that data was successfully exfiltrated, and that the data is in the hands of persons who intend to monetize it.

42. Upon information and belief, Vanguard previously reported a separate data security incident involving Social Security numbers to the Massachusetts Office of Consumer Affairs and

[7] *Supra* n.3.

Business Regulation on or about February 11, 2026, which further placed Vanguard on notice of weaknesses in its data security.[8]

***The Stolen Data Exposes Class Members to Account Takeover, Identity Theft, and Fraud***

43. A Social Security number is among the most valuable pieces of personal information a criminal can obtain. Unlike a credit card number, it cannot be cancelled and reissued at will; the Social Security Administration assigns a new number only in narrow circumstances, and even then a new number does not erase the victim's credit history or prevent use of the old number.[9] With a name and Social Security number, criminals can open new credit accounts, file fraudulent tax returns, obtain government benefits, and pass identity checks at financial institutions.

44. The telephone and carrier data reportedly included in the Data Breach compound that risk. In a SIM-swap or port-out scheme, a criminal impersonates the victim to the victim's mobile carrier and has the victim's number transferred to a device the criminal controls. The criminal then receives the victim's calls and text messages, including the one-time passcodes that banks and brokerages send to confirm logins, password resets, and transfers.

45. Regulators have recognized the seriousness of this threat. The Federal Communications Commission adopted rules in 2023 requiring wireless carriers to strengthen authentication before transferring a customer's number, citing widespread consumer harm from

---

[8] https://www.claimdepot.com/data-breach/vanguard-2026 (last visited Nov. 11, 2026).

[9] Soc. Sec. Admin., *Identity Theft and Your Social Security Number*, Pub. No. 05-10064, https://www.ssa.gov/pubs/EN-05-10064.pdf.

SIM-swap and port-out fraud.[10] The FBI has likewise warned that criminals use SIM swapping to defeat text-based two-factor authentication and drain financial and cryptocurrency accounts.[11]

46. The Data Breach hands criminals the full toolkit for such an attack: the victim's identity and Social Security number (to impersonate the victim to the carrier), the specific number the victim uses for Vanguard verification, and the carrier to target. Investment and retirement accounts—often a family's largest store of liquid wealth—are especially attractive targets.

47. The stolen telephone numbers also enable targeted "smishing" and phishing campaigns in which criminals pose as Vanguard and send messages to clients at the very numbers Vanguard uses, increasing the likelihood that victims will surrender passwords, codes, or account details.

48. Stolen data is often used long after a breach. The U.S. Government Accountability Office has found that criminals may hold stolen data for a year or more before using it and that, once posted online, the data may be used fraudulently for years.[12] Criminals also aggregate data from multiple breaches into comprehensive "fullz" profiles, which are bought and sold on dark web marketplaces.[13]

49. Recovering from identity theft is costly and time-consuming. The Federal Trade Commission recommends that victims, among other things, contact affected companies, place

---

[10] *Protecting Consumers from SIM-Swap and Port-Out Fraud*, Report and Order, WC Docket No. 21-341, FCC 23-95 (Nov. 16, 2023).

[11] Fed. Bureau of Investigation, Internet Crime Complaint Ctr., Public Service Announcement No. I-020822-PSA, *Criminals Increasing SIM Swap Schemes to Steal Millions of Dollars from US Public* (Feb. 8, 2022), https://www.ic3.gov/PSA/2022/PSA220208.

[12] U.S. Gov't Accountability Off., GAO-07-737, *Personal Information: Data Breaches Are Frequent, but Evidence of Resulting Identity Theft Is Limited; However, the Full Extent Is Unknown* (June 2007), https://www.gao.gov/assets/gao-07-737.pdf.

[13] *See, e.g.*, Ben Luthi, *Here's What Your Data Sells for on the Dark Web*, Experian (June 30, 2025), https://www.experian.com/blogs/ask-experian/heres-how-much-your-personal-information-is-selling-for-on-the-dark-web/.

fraud alerts or credit freezes, review credit reports, and file reports with the FTC and law enforcement—steps that consume hours and often must be repeated.[14]

50. PII has substantial value, as shown by the legitimate market for consumer data and the illicit market for stolen identities. The theft and publication of Plaintiff's and Class Members' PII has diminished its value and deprived them of control over how it is used.

***Vanguard Was Obligated to Protect Client Data and to Promptly Disclose a Breach***

51. The Gramm-Leach-Bliley Act provides that that every financial institution "has an affirmative and continuing obligation to respect the privacy of its customers and to protect the security and confidentiality of those customers' nonpublic personal information." 15 U.S.C. § 6801(a). The Act directs federal regulators to establish standards requiring institutions to protect against anticipated threats to the security of such information and against unauthorized access that could result in substantial harm to customers. *Id.* § 6801(b).

52. Implementing that mandate, the SEC's Regulation S-P requires broker-dealers, investment companies, and registered investment advisers to adopt written policies and procedures reasonably designed to ensure the security and confidentiality of customer information, protect against anticipated threats or hazards, and protect against unauthorized access to or use of customer information. 17 C.F.R. § 248.30.

53. In 2024, the SEC amended Regulation S-P to require covered institutions to maintain an incident response program reasonably designed to detect, respond to, and recover from unauthorized access to customer information, and to notify affected individuals as soon as practicable, but not later than thirty days, after becoming aware that unauthorized access to or use

[14] Fed. Trade Comm'n, IdentityTheft.gov, https://www.identitytheft.gov/Steps.

of sensitive customer information has occurred or is reasonably likely to have occurred.[15] Larger entities were required to comply by December 3, 2025.

54. Section 5 of the Federal Trade Commission Act, 15 U.S.C. § 45, prohibits unfair practices in or affecting commerce. The FTC has repeatedly treated a company's failure to employ reasonable and appropriate data security as an unfair practice and has issued guidance describing baseline expectations, including: knowing what personal information the business holds; keeping only what is needed; encrypting sensitive data; limiting access on a need-to-know basis; requiring strong authentication; monitoring networks for unauthorized intrusions and unusual outbound data transfers; and maintaining a plan to respond to security incidents.[16]

55. Recognized industry frameworks, including the National Institute of Standards and Technology Cybersecurity Framework 2.0 and the Center for Internet Security Critical Security Controls, call for similar measures, including asset inventories, data minimization, encryption at rest and in transit, network segmentation, multi-factor authentication for privileged access, centralized logging and alerting, data loss prevention, and tested incident response plans. These measures are standard for financial institutions of Vanguard's size and sophistication.

56. Pennsylvania's Breach of Personal Information Notification Act requires an entity that maintains computerized personal information of Pennsylvania residents to provide notice of a breach without unreasonable delay. 73 P.S. § 2301 *et seq.* As amended in 2024, the Act also requires entities whose breach exposes Social Security numbers, bank account numbers, or driver's

---

[15] *Regulation S-P: Privacy of Consumer Financial Information and Safeguarding Customer Information*, Exchange Act Release No. 100155, 89 Fed. Reg. 47,688 (June 3, 2024).
[16] Fed. Trade Comm'n, *Protecting Personal Information: A Guide for Business* (Oct. 2016); Fed. Trade Comm'n, *Start with Security: A Guide for Business* (Aug. 2023).

license or state identification numbers to offer affected individuals at least twelve months of credit monitoring and access to a credit report.

57. Upon information and belief, Vanguard failed to meet these standards, including by failing to: (a) adequately encrypt or tokenize Social Security numbers and other PII at rest; (b) segment systems containing PII from other parts of its network; (c) limit retention of SMS verification logs and other client data to what was reasonably necessary; (d) restrict and monitor access to databases containing client PII; (e) detect the exfiltration of millions of records; and (f) timely notify affected clients.

58. Had Vanguard implemented reasonable safeguards, the Data Breach would have been prevented, or its scope substantially limited.

***Plaintiff and Class Members Have Suffered Concrete Injuries***

59. As a direct and proximate result of Vanguard's conduct, Plaintiff and Class Members have suffered and will continue to suffer injuries including: (a) theft and publication of their PII; (b) lost time spent monitoring accounts and mitigating the effects of the Data Breach; (c) out-of-pocket costs for credit monitoring, credit freezes, and related services; (d) diminished value of their PII; (e) loss of the benefit of their bargain with Vanguard, because part of what they paid Vanguard was for reasonable data security they did not receive; (f) emotional distress, anxiety, and loss of privacy; and (g) a substantial and imminent risk of identity theft, account takeover, and fraud.

60. Because the stolen data was intentionally taken by criminals and offered for sale on the dark web, the risk of misuse is neither speculative nor remote.

61. Plaintiff and Class Members also face continuing risk because Vanguard still holds their PII and, upon information and belief, has not demonstrated that it has remedied the deficiencies that allowed the Data Breach.

62. Vanguard has not offered affected individuals credit monitoring or identity theft protection. Even twelve months of monitoring would be inadequate given that Social Security numbers do not expire and the risk of misuse will persist for years.

**CLASS ACTION ALLEGATIONS**

63. Plaintiff brings this action under Federal Rules of Civil Procedure 23(a), (b)(2), (b)(3), and, as appropriate, (c)(4), on behalf of the following class:

> *Nationwide Class:* All individuals in the United States whose personal information was accessed, acquired, or exfiltrated in the Data Breach (the "Class").

64. Excluded from the Class are Vanguard and its parents, subsidiaries, affiliates, officers, and directors; any entity in which Vanguard has a controlling interest; Vanguard's legal representatives, successors, and assigns; and the judicial officers assigned to this matter and their staff and immediate families.

65. Plaintiff reserves the right to amend the class definitions as discovery and further investigation warrant.

66. *Numerosity*. The Class is so numerous that joinder is impracticable. Upon information and belief, it includes at least hundreds of thousands, and potentially millions, of individuals, who can be identified from Vanguard's records.

67. *Commonality*. Questions of law and fact common to the Class include, among others:

(a) whether Vanguard owed Plaintiff and Class Members a duty to use reasonable care in safeguarding their PII;

(b) when Vanguard learned of the Data Breach and whether its notice was timely and adequate;

(c) whether unauthorized persons acquired Class Members' Private Information;

(b) whether Vanguard's data security practices were reasonable and consistent with applicable law, regulation, and industry standards;

(c) whether Vanguard breached its duties, resulting in the Data Breach;

(d) whether Vanguard unreasonably delayed notifying Plaintiff and Class Members of the Data Breach;

(e) whether Vanguard violated Section 5 of the FTC Act, the Gramm-Leach-Bliley Act, or Regulation S-P;

(f) whether Vanguard owed and breached fiduciary duties to Plaintiff and Class Members;

(g) whether implied contracts existed between Vanguard and Class Members and whether Vanguard breached them;

(h) whether Vanguard was unjustly enriched; and

(i) whether Plaintiff and Class Members are entitled to damages, restitution, declaratory relief, and injunctive relief, and the proper measure of such relief.

68. *Typicality*. Plaintiff's claims are typical of the claims of the Class. Plaintiff and every Class Member entrusted PII to Vanguard, had that PII compromised in the same Data Breach, and assert claims arising from the same course of conduct.

69. *Adequacy*. Plaintiff will fairly and adequately protect the interests of the Class, has no interests antagonistic to the Class, and has retained counsel experienced in complex class action and data privacy litigation.

70. *Predominance and Superiority*. Common questions predominate because Vanguard's data security practices and breach response are uniform as to all Class Members. A class action is superior to individual litigation because individual damages are small relative to the expense of litigating against a well-resourced defendant, and class treatment will conserve judicial resources and avoid inconsistent adjudications.

71. *Rule 23(b)(2)*. Vanguard has acted or refused to act on grounds generally applicable to the Class, making final injunctive and declaratory relief appropriate for the Class as a whole.

72. *Rule 23(c)(4)*. Alternatively, particular issues—such as the existence and breach of Vanguard's duties—are appropriate for certification because their resolution would materially advance the litigation.

## CAUSES OF ACTION

### COUNT I
### NEGLIGENCE
### (On Behalf of Plaintiff and the Class)

73. Plaintiff incorporates paragraphs 1 through 72 as if fully set forth herein.

74. Vanguard required Plaintiff and Class Members to provide their PII as a condition of receiving its services, and it collected, stored, and used that PII for its own business purposes.

75. Having collected and stored that PII, Vanguard owed Plaintiff and Class Members a duty to exercise reasonable care in safeguarding it from unauthorized access, acquisition, and misuse.

76. Vanguard's duty arose from, among other things, the foreseeable risk of criminal attack on a financial institution holding millions of Social Security numbers; Vanguard's superior knowledge of and control over its own systems; the special relationship between an investment firm and its clients; and the standards reflected in the Gramm-Leach-Bliley Act, Regulation S-P, Section 5 of the FTC Act, and Pennsylvania law.

77. Vanguard also owed a duty to timely and accurately notify Plaintiff and Class Members of the Data Breach so that they could take steps to protect themselves.

78. Vanguard breached its duties by, among other things, failing to implement reasonable security measures; failing to encrypt, segment, and limit retention of client PII; failing to detect and stop the exfiltration of millions of records; and failing to provide timely, complete notice of the Data Breach.

79. It was reasonably foreseeable that Vanguard's failures would result in the theft of client PII and resulting harm. Plaintiff and Class Members did nothing to cause the Data Breach.

80. As a direct and proximate result of Vanguard's negligence, Plaintiff and Class Members suffered the injuries described above and are entitled to compensatory and nominal damages in an amount to be proven at trial.

**COUNT II**
**NEGLIGENCE PER SE**
**(On Behalf of Plaintiff and the Class)**

81. Plaintiff incorporates paragraphs 1 through 72 as if fully set forth herein.

82. Section 5 of the FTC Act, 15 U.S.C. § 45, prohibits unfair practices in or affecting commerce, including the failure to use reasonable measures to protect consumers' personal information. The Gramm-Leach-Bliley Act, 15 U.S.C. § 6801, and Regulation S-P, 17 C.F.R. §

248.30, likewise require financial institutions to safeguard customer information and, under Regulation S-P, to timely notify affected individuals of unauthorized access.

83. These provisions were enacted to protect consumers and financial-institution customers, such as Plaintiff and Class Members, from precisely the type of harm caused by the Data Breach.

84. Vanguard violated these provisions by failing to use reasonable measures to protect client PII and by failing to timely notify affected individuals.

85. Vanguard's violations constitute negligence *per se* and, at a minimum, evidence of its failure to exercise reasonable care. As a direct and proximate result, Plaintiff and Class Members suffered the injuries described above.

**COUNT III**
**BREACH OF FIDUCIARY DUTY**
**(On Behalf of Plaintiff and the Class)**

86. Plaintiff incorporates paragraphs 1 through 72 as if fully set forth herein.

87. A confidential and fiduciary relationship existed between Vanguard and its clients. Vanguard held itself out as acting in its clients' best interests, managed their savings, and accepted their most sensitive personal information on the understanding that it would be held in confidence and used solely to provide services to them.

88. By virtue of that relationship, Vanguard owed Plaintiff and Class Members fiduciary duties of loyalty and care with respect to the PII entrusted to it, including duties to safeguard that information, to refrain from exposing it to unreasonable risk, and to disclose promptly and fully any compromise of it.

89. Vanguard breached these duties by failing to protect Plaintiff's and Class Members' PII and by failing to disclose the Data Breach and its scope in a timely and complete manner.

90. As a direct and proximate result, Plaintiff and Class Members suffered the injuries described above.

**COUNT IV**
**BREACH OF IMPLIED CONTRACT**
**(On Behalf of Plaintiff and the Class)**

91. Plaintiff incorporates paragraphs 1 through 72 as if fully set forth herein.

92. When Plaintiff and Class Members opened and maintained accounts with Vanguard, they provided their PII and paid fees and expenses in exchange for Vanguard's services. In doing so, they entered into implied contracts with Vanguard.

93. The terms of those implied contracts, as evidenced by the parties' conduct, the nature of the relationship, and Vanguard's privacy notices, included Vanguard's promises to use the PII only for legitimate business purposes, to take reasonable measures to protect it consistent with law and industry standards, to retain it only as long as necessary, and to provide prompt notice if it was compromised.

94. Plaintiff and Class Members would not have provided their PII to Vanguard absent these implied terms. They performed their obligations by providing their PII and paying for Vanguard's services.

95. Vanguard breached the implied contracts by failing to reasonably safeguard Plaintiff's and Class Members' PII, by retaining data longer than necessary, and by failing to provide timely notice of the Data Breach. Vanguard also breached the covenant of good faith and fair dealing implied in every contract under Pennsylvania law.

96. As a direct and proximate result, Plaintiff and Class Members suffered damages, including loss of the benefit of their bargain, and are entitled to compensatory, consequential, and nominal damages.

**COUNT V**
**UNJUST ENRICHMENT**
**(On Behalf of Plaintiff and the Class, in the Alternative to Count IV)**

97. Plaintiff incorporates paragraphs 1 through 72 as if fully set forth herein. This Count is pleaded in the alternative to Count IV.

98. Plaintiff and Class Members conferred benefits on Vanguard in the form of fees, expenses, and other payments, as well as their PII, which Vanguard used to operate and profit from its business.

99. Vanguard knew of and accepted these benefits. A portion of the payments it received was intended to fund reasonable data security, which Vanguard failed to provide. Vanguard instead retained the savings from underinvesting in security.

100. Under the circumstances, it would be inequitable for Vanguard to retain those benefits without compensating Plaintiff and Class Members.

101. Plaintiff and Class Members are entitled to restitution and disgorgement of the amounts by which Vanguard was unjustly enriched.

**COUNT VI**
**DECLARATORY AND INJUNCTIVE RELIEF**
**28 U.S.C. §§ 2201–2202**
**(On Behalf of Plaintiff and the Class)**

102. Plaintiff incorporates paragraphs 1 through 72 as if fully set forth herein.

103. An actual and justiciable controversy exists regarding whether Vanguard’s current data security practices are adequate to protect the PII it continues to hold and whether Vanguard has satisfied its notification obligations. Plaintiff contends they are not and it has not.

104. Plaintiff and Class Members seek a declaration that: (a) Vanguard owes them a continuing legal duty to reasonably secure their PII and to timely and fully notify them of any breach; and (b) Vanguard continues to breach those duties.

105. Plaintiff and Class Members also seek corresponding injunctive relief requiring Vanguard to, among other things: (a) provide full notice of the Data Breach, including the categories of data compromised and the time frame of the intrusion; (b) engage independent third-party security auditors to test its systems and remediate identified deficiencies; (c) encrypt and segment client PII; (d) purge PII and verification logs not needed for legitimate business purposes; (e) offer clients phishing-resistant, non-SMS authentication options; and (f) provide extended credit monitoring, identity theft insurance, and identity restoration services to Class Members.

106. Absent an injunction, Plaintiff and Class Members face irreparable harm from a further breach for which there is no adequate remedy at law. The hardship to Plaintiff and the Class absent relief outweighs the burden on Vanguard of implementing security measures it is already obligated to maintain, and the requested relief serves the public interest.

## PRAYER FOR RELIEF

WHEREFORE, Plaintiff, individually and on behalf of the Class, respectfully requests that the Court enter judgment in Plaintiff’s favor and against Vanguard and award the following relief:

A. An order certifying the Class as defined above, appointing Plaintiff as Class Representative, and appointing Plaintiff’s counsel as Class Counsel;

B. Declaratory and injunctive relief as described above;

C. Compensatory, consequential, and nominal damages in an amount to be determined at trial;

D. Restitution and disgorgement of amounts by which Vanguard was unjustly enriched;

E. An order requiring Vanguard to provide extended credit monitoring and identity protection services to Class Members;

F. Punitive damages to the extent permitted by law;

G. Reasonable attorneys' fees, costs, and expenses;

H. Pre- and post-judgment interest at the maximum rate permitted by law; and

I. Such other and further relief as the Court deems just and proper.

**DEMAND FOR JURY TRIAL**

Pursuant to Federal Rule of Civil Procedure 38, Plaintiff demands a trial by jury on all claims so triable.

Dated: November 11, 2026

Respectfully submitted,

By: */s/ Steven A. Schwartz*

Steven A. Schwartz (PA ID No. 50579)
Beena M. McDonald (PA ID No. 83315)
Marissa N. Pembroke (PA ID No. 330494)
**CHIMICLES SCHWARTZ KRINER & DONALDSON-SMITH LLP**
One Haverford Centre
361 Lancaster Avenue
Haverford, PA 19041
Telephone: (610) 642-8500
sas@chimicles.com
bmm@chimicles.com
mnp@chimicles.com

*Counsel for Plaintiff and the Proposed Class*